LAW OFFICE OF
LEE PHILLIPS, P.C.
209 N. Elden Street
Flagstaff, Arizona 86001
(928) 779-1560
(928) 447-7001 Facsimile
leephillips@leephillipslaw.com

LEE PHILLIPS
State Bar No. 009540
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ina Beam, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR JUDICIAL REVIEW** |
| Office of Navajo and Hopi Indian Relocation, an administrative agency of the United States, | |
| Defendant. | |

## PRELIMINARY STATEMENT

1. This action is brought by Plaintiff Ina Beam to obtain judicial review of an administrative decision of the Office of Navajo and Hopi Indian Relocation (hereinafter "ONHIR") finding that she is not entitled to relocation assistance benefits pursuant to the Navajo-Hopi Settlement Act ("Act"), 25 U.S.C. §640d-14© and the regulations and policies promulgated thereunder. Specifically, ONHIR found that Ms. Beam was not a Head of Household at the time she and her

parents moved from the Hopi Partitioned Lands ("HPL") to Tuba City, Arizona, which is on Navajo land, in April 1985. ONHIR found that Plaintiff Beam was not self-supporting because she had not earned at least $1,300 in a year.

2. Plaintiff Beam appealed the decision that she was not a Head of Household when she and her family moved off the HPL. Plaintiff Beam's administrative appeal hearing was held on March 20, 2015. At the hearing ONHIR stipulated that Plaintiff Beam became a self-supporting Head of Household when she earned $1,735 working during the summer of 1984.

3. On June 12, 2015 ONHIR's Hearing Officer issued his decision finding that although Plaintiff Beam was a self-supporting Head of Household in the summer of 1984, she was not a "legal resident" of the HPL when she moved off the HPL. The Hearing Officer also found that Plaintiff Beam had moved off the HPL when she attended elementary and high school in Tuba City which was a 20-minute commute from her family's HPL homesite. The Hearing Officer therefore denied her appeal.

4. Plaintiff Beam appealed this decision to the U.S. District Court of Arizona located in Phoenix, Arizona. On August 29, 2022 the District Court granted Plaintiff Beam's Motion for Summary Judgment and denied ONHIR's Cross Motion. The Court remanded Plaintiff Beam's case back to ONHIR for further proceedings consistent with the Court's order.

5. On remand, Plaintiff Beam requested that ONHIR conduct a hearing on the issue of whether Plaintiff Beam was a legal resident of the HPL when she abandoned her HPL homesite and moved to Tuba City to attend school. The Hearing Officer denied Ina's request and instead ordered the parties to brief the residency issue so the Hearing Officer could decide the residency issue based solely upon the Hearing Officer's review of the record of the original administrative appeal hearing of March 20, 2015.

6. Plaintiff Beam now seeks judicial review of the Hearing Officer's September 5, 2023 decision again denying Plaintiff Beam's application for relocation housing benefits.

## I. Jurisdiction and Venue

7. This court has jurisdiction pursuant to 28 U.S.C. §1331, 5 U.S.C. §701-706, and 25 U.S.C. §640d-14(g), as this action is an appeal from an eligibility determination of Defendant ONHIR, an administrative agency of the United States located in Flagstaff, Arizona. Plaintiff has exhausted her administrative remedies.

## II. Parties

8. Plaintiff Beam is an enrolled member of the Navajo Nation who was subject to relocation from her family's ancestral home on the Hopi Partitioned Lands (H.P.L.) as a consequence of the Navajo-Hopi Settlement Act.

9.  Defendant ONHIR is an independent federal agency created by Congress pursuant to 25 U.S.C. §640d-11 to carry out the relocation of members of the Navajo and Hopi Tribes who resided on land that was partitioned to the other tribe, and to provide relocation assistance benefits for all households required to relocate pursuant to 25 U.S.C. §640d to "insure that persons displaced as a result of the Act are treated fairly, consistently and equitably so that these persons will not suffer the disproportionate adverse, social, economic, cultural and other impacts of relocation." 25 CFR §700.1(a).

### III.  Facts

10.  Plaintiff Beam applied for relocation benefits on January 25, 2010.

11.  Plaintiff Beam was initially denied relocation benefits on December 20, 2012.  ONHIR's reason for its first decision to deny benefits was that Plaintiff Beam was not a "head of household" when she moved off the HPL as required by ONHIR's regulations and policies.

12.  The December 20, 2012 letter denying Plaintiff Beam relocation benefits stated that ONHIR records indicate that she was not a head of household when she moved off the HPL in "about 1982 or 1983."  Specifically she was not married, was not a parent and was not self-supporting because she did not earn $1,300 or more until 1984.

13.  Plaintiff Beam filed a timely notice of appeal.

14. Plaintiff Beam's administrative appeal hearing was held before ONHIR on March 20, 2015. Testimony was provided by Plaintiff Beam and her mother Mary Mexicano. The witnesses testified consistently about Plaintiff Beam's head of household status. In addition, evidence established Plaintiff turned 18 in 1984 and had earnings of at least $1,735 in that year. To be considered a Head of Household a person must be married, be a parent or be self-supporting (including earning $1,300 or more per year).

15. The witnesses at the March 20, 2015 hearing testified that Plaintiff Beam was born to her parents Mary and John Mexicano on November 15, 1966. Plaintiff Beam and her family lived with her paternal grandmother, Belle Mexican, on the HPL approximately six and a half miles from the Red Lake Trading Post.

16. On June 12, 2015 ONHIR's appeal hearing officer, Harold Merkow ("HO"), issued his written decision denying Plaintiff Beam's appeal. In his decision the HO found that even though ONHIR had stipulated at the appeal hearing that Plaintiff Beam was a head of household in 1984, when she turned 18-years-old on November 15, 1984, she was not a legal resident of the HPL once she enrolled in the Tuba City Chapter.

17. The HO reached this decision by arbitrarily and without evidence finding that Plaintiff Beam had knowingly abandoned her membership in the Red Lake Chapter of the Navajo Nation and joined the Tuba City Chapter of the Navajo

Nation "immediately when she turned 18-years-old on November 15, 1984." The HO based his decision on his erroneous finding that "In November 1984, when (Plaintiff Beam) turned 18 years of age, she "immediately enrolled as a member of the Tuba City Chapter."

18. What Plaintiff Beam actually said when asked when did she join the Tuba City Chapter? "As soon as I was able to, when I was 18." According to her college transcript, Plaintiff Beam studied at LeTourneau College in Longview, Texas. She began her college studies on August 23, 1984. She turned 18-years-old on November 15, 2014 while away at school and returned to her family's HPL homesite after she finished her spring semester in May 1985.

19. There was no testimony or any other substantial evidence that Plaintiff Beam enrolled in the Tuba City Chapter "immediately" upon turning 18 on November 15, 1984. In fact, the evidence is that Plaintiff Beam began college in August 1984 and returned home to her parents and grandmother after she finished her spring semester in May 1985. At the conclusion of the hearing the HO confirmed that Plaintiff Beam's grandmother and her parents relocated from the HPL in "April of 1985" while Plaintiff Beam was away attending college in Texas.

20. Plaintiff Beam's parents and her grandmother were all certified for relocation benefits from the same HPL homesite.

21. The HPL homesite included a two-bedroom house, shack, sheep corral, brush arbor and cornfield. Plaintiff Beam and her parents and siblings stayed in the shack.

22. The family grew watermelon, squash and corn. The family had cows, horses and sheep. The cows and horses were sold through the livestock reduction program. The family grazed the remaining sheep on the HPL until Plaintiff Beam's grandmother, Belle Mexican, relocated in April, 1985.

23. Plaintiff Beam's father, John Mexicano, was a minister for the Red Lake/Tonalea Chapter and served his congregation on a regular basis.

24. Due to the construction freeze and the need for more space for their children, Plaintiff Beam and her parents purchased a trailer and rented a space in nearby Tuba City for the trailer. The trailer was located in Tuba City so that Plaintiff Beam and her siblings could attend school.

25. Plaintiff Beam and her parents continued to return to their HPL homesite two to three times per week due to Plaintiff Beam's father's ministering duties and the family caring for their HPL homesite and Plaintiff Beam's elderly grandmother.

26. Plaintiff Beam attended Tuba City High School and graduated in May, 1984. After graduating she worked the summer at Thriftway in Tuba City as a cashier. Plaintiff Beam earned $1,735 from her employment at Thriftway.

27. Plaintiff Beam continued to return to the HPL at least three times a week when she was not working to help with the cornfield, herding sheep and caring for her Grandmother.

28. In the fall of 1984, when Plaintiff Beam was eighteen years old, she attended Le Tourneau College in Longview, Texas. Plaintiff Beam used Navajo tribal scholarship funds as well student loans to pay for her college education because her parents would not afford to pay for Plaintiff Beam's college related expenses.

29. Plaintiff Beam returned home to the HPL for her winter break in December, 1984. At that time the sheep were still grazing and her grandmother was still living on the HPL when Plaintiff Beam returned home in December, 1984. This was the last time that Plaintiff Beam returned to her HPL homesite because her grandmother and her parents relocated in April, 1985 while Plaintiff Beam was away at college.

30. The March 20, 2015 administrative hearing record established that Defendant's denial of Plaintiff Beam's claim for relocation benefits was arbitrary, capricious and an abuse of discretion; not supported by substantial evidence, not in accordance with applicable law and; occurred without observance of procedure required by law because there is no substantial evidence in the record as to when Plaintiff Beam joined the Tuba City Chapter.

31. The ONHIR published a Plan Update in 1990 which defined residency for the purpose of relocation benefits. It rejected "actual occupancy" as a requirement and instead chose "legal residency" as the operative definition. Legal residency is, according to the ONHIR,

> Where a person might be temporarily away, but maintained substantial, recurring contact with an identifiable homesite. This interpretation considered the fact that many persons would leave the partitioned lands temporarily to seek employment, job training, or other opportunities. Yet, they maintained strong ties to their homes and community and *considered themselves* residents.

*Id*. (emphasis added). The agency justified its choice of definition as follows:

> [T]he definition of legal residency best met both legal requirements and circumstances of life on the partitioned lands. By reflecting the cultural traditions and economic realities of the people affected by relocation, this interpretation fulfilled the intent of Congress to provide for a thorough and generous program.

32. The purpose of the Navajo-Hopi Settlement Act, 25 U.S.C. §640-d *et seq*. is to "insure that persons displaced as a result of the Act are treated fairly, consistently and equitably so that these persons will not suffer the disproportionate adverse, social, economic, cultural and other impacts of relocation." 25 CFR §700.1(a).

33. "The United States Supreme Court has repeatedly recognized 'the distinctive obligation of trust incumbent upon the Government in its dealings with [Native Americans]." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878

F.2d 1119, 1124 (9th Cir. 1989) (quoting *Seminole Nation v. United States*, 316 U.S. 286, 296, 62 S.Ct. 1049, 86 L.Ed. 1480, 96 Ct. Cl. 561 (1942)) (alteration in original) (citations omitted). *Herbert v. ONHIR*, No. CV06-03014-PCT-NVW, 2008 U.S. Dist. LEXIS 125947 (D. Ariz. Feb. 27, 2008). This obligation is reflected in the ONHIR's own Plan Update that it is "the intent of Congress to provide for a thorough and generous [relocation benefit] program."

34. On August 29, 2022 the Honorable Steven Logan issued his order granting Plaintiff Beam Beam's Motion for Summary Judgment and denying ONHIR's Cross-Motion. The Judge also remanded the case to ONHIR for further proceedings consistent with his decision.

35. The basis for Judge Logan's decision was because the HO found that Plaintiff and her mother's testimony about the frequency of Plaintiff's visits to the Red Lake homesite was "exaggerated and not credible." "These Credibility determinations were particularly important given the IHO's conclusion that Plaintiff's visits to and contacts with the Red Lake residence dissipated to the point that her HPL residency was extinguished by the time she became a head of household in 1984."

36. Judge Logan agreed with Plaintiff Beam's argument that the HO's credibility finding about Plaintiff Beam and her mother's testimony was not supported by specific cogent reasons constituting substantial evidence. Judge

Logan wrote: Here, the IHO's one-sentence credibility determinations, merely state that IHO found the testimony to be "exaggerated and not credible" without any other explanation or support. Judge Logan found the IHO's conclusion that Plaintiff's visits to the HPL "paled by comparison" to her "many and significant connections to Tuba City", also lacked specific cogent evidence that Plaintiff's visits to the HPL were fewer and less frequent than what she testified to. Judge Logan found:

> "As it stands, however, the IHO's own conclusion that Plaintiff's visits 'paled by comparison' is, at best, a conclusory assertion that is insufficient to prove that Plaintiff and her mother were exaggerating. At worst, it is nothing more than circular reasoning: the IHO does not prove that Plaintiff and her mother were exaggerating Plaintiff's visitation frequency by asserting, without any evidence, that Plaintiff did not visit frequently."
> p. 11.

37. On remand ONHIR filed a Request for Record Review After Remand on February 13, 2023. On March 20, 2023 Plaintiff filed "Ms. Ina Beam's Objection to ONHIR's Request for Record Review."

38. On April 3, 2023 the HO ordered that the parties file simultaneous briefs/memoranda concerning Plaintiff Beam's residency pattern and when her residency on the HPL was "extinguished" and whether "substantial evidence" exists in the record to support a conclusion that "applicant's legal residence at Red Lake ended prior to her attaining head of household status in the late summer/early fall of 1984."

39. Plaintiff Beam filed a "Remand Memorandum and Request to Supplement the Record with Ms. Beam's Declaration" on May 23, 2023 and "Request to Supplement the Record and Response to ONHIR's Motion to Strike Plaintiff Beam's Reply and Attached Supporting Declaration of Plaintiff Beam" on May 23, 2023.

40. On August 16, 2023, the HO denied Plaintiff Beam's request to supplement the record with Plaintiff Beam's Declaration which addressed the questions raised by Judge Logan in his decision.

41. On September 5, 2023 the HO issued his record review and decision and again found that Plaintiff Beam was not eligible for relocation benefits. Plaintiff Beam now seeks judicial review of the HO's second denial with her second appeal.

### IV.   Claims for Relief

42. Plaintiff Beam complains that Defendant ONHIR's second eligibility decision to deny her relocation benefits, to which she is entitled as a matter of law, adversely affects her.

43. Further that Defendant ONHIR's second eligibility decision is arbitrary, capricious and an abuse of discretion.

44. Further that Defendant ONHIR's second eligibility decision is not supported by substantial evidence.

45. Further that Defendant ONHIR's second eligibility decision is not in accordance with and violates ONHIR's fiduciary duty owed to Plaintiff Beam and other Native American applicants for federal relocation assistance.

46. And finally, Defendant ONHIR's second eligibility decision occurred without observation of due process procedures and others required by law.

### V.  Prayer for Relief

WHEREFORE, Plaintiff Beam prays that this Court:

(a) Assume jurisdiction over the matter;

(b) After judicial review, enter judgment holding the eligibility determination of Defendant ONHIR to be contrary to law and in violation of ONHIR's federal trust responsibilities to Plaintiff Beam and set it aside;

(c) Order the Defendant to issue a new determination that Plaintiff Beam is eligible for relocation assistance benefits and that Defendant ONHIR award those benefits to her.

(d) Award Plaintiff Beam costs and reasonably attorneys' fees pursuant to 28 U.S.C. §2412.

(e) Grant such other relief as this Court deems just and proper.

RESPECTFULLY submitted this 31st day of March 2024.

*s/Lee Phillips*
Lee Phillips
Attorney for Plaintiff Ina Beam