**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ina Beam, | No. CV-24-08066-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

At issue is Plaintiff Ina Beam's Motion for Summary Judgment (Doc. 17, Pl. MSJ), to which Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR") filed a Response and Cross-Motion for Summary Judgment (Doc. 24, ONHIR MSJ), Plaintiff filed a consolidated Reply and Response (Doc. 29, Pl. Reply), and ONHIR filed a Reply (Doc. 33, ONHIR Reply). The Court will resolve the cross-motions for summary judgment without oral argument. LRCiv 7.2(f).

**I.     BACKGROUND**

Plaintiff Ina Beam was born in 1966 and is an enrolled member of the Navajo Nation. (Doc. 1, Compl. ¶¶ 8, 15.) She spent her early years living with her parents and grandmother on land that would later be partitioned to the Hopi Tribe ("the HPL homesite"). (Compl. ¶¶ 18–22.) She attended elementary, middle, and high school in Tuba City, Arizona, where her parents rented and eventually owned a trailer homestead in which they all stayed. (Compl. ¶ 24.) Plaintiff alleges that during that time she and her parents

returned to the HPL homesite two to three times per week to take care of her grandmother and maintain her father's ministering duties. (Compl. ¶ 25.)

After graduating from Tuba City High School in 1984, Plaintiff spent the summer working at Thriftway in Tuba City, where she earned $1,735. (Compl. ¶ 26.) During that time, Plaintiff alleges that she continued to return to the HPL homesite at least thrice per week to care for her grandmother. (Compl. ¶ 27.) In the fall of 1984, Plaintiff began attending Le Tourneau College in Longview, Texas. (Compl. ¶ 28.) Plaintiff alleges that she returned to the HPL homesite for winter break in December 1984, and that visit was her last before her grandmother relocated in April 1985. (Compl. ¶ 29.) When Plaintiff turned 18 in November 1984, she joined the Tuba City Navajo Chapter. (Doc. 13, R., Ex. 19, Hr'g Tr. at 13.) Her father was previously an official in the Tonalea Chapter, which encompasses the HPL homesite. (Hr'g Tr. at 12–13.)

On January 25, 2010, Plaintiff applied for relocation benefits under the Navajo-Hopi Land Settlement Act, Pub. L. No. 93-531 § 12, 88 Stat. 1718, ("Settlement Act"). (R. Ex. 5.) ONHIR denied her application on December 20, 2012, stating that Plaintiff failed to show that she had reached head of household status by 1982 or 1983, which is when she stated in her application that she left the HPL homesite. (R. Ex. 10.)

On appeal, an Independent Hearing Officer ("IHO") held a hearing on March 20, 2015, at which Plaintiff and her mother testified. (Hr'g Tr.) The IHO issued a decision upholding ONHIR's denial of relocation benefits, stating that Plaintiff failed to show sufficient contacts with the HPL homesite to demonstrate that the HPL homesite, rather than or in addition to her Tuba City address, was her legal residence. (R. Ex. 32.) ONHIR issued its Final Agency Action on July 1, 2015. (R. Ex. 33.)

On July 1, 2021, Plaintiff filed a complaint in a prior action in this Court under the Administrative Procedure Act. (R. Ex. 36, Case No. 3:21-cv-08149-SPL, Doc. 1.) After cross-motions for summary judgment, District Judge Steven P. Logan reversed and remanded to ONHIR for further proceedings, citing a lack of "specific, cogent reasons from the record" for the IHO's finding that Plaintiff was not credible in her testimony regarding

the frequency and nature of her visits to the HPL homesite. (R. Ex. 44; *Beam v. Office of Navajo & Hopi Indian Relocation*, 624 F. Supp. 3d 1069, 1078 (D. Ariz. 2022).)

On remand, ONHIR requested that the IHO review the record and issue a new decision. (R. Ex. 45.) Plaintiff filed a Motion to Supplement the Record, which the IHO denied. (R. Exs. 46–48.). On September 5, 2023, the IHO issued a new decision ("Decision II") again determining that Plaintiff was not entitled to relocation benefits because she was not credible in her testimony regarding the frequency and nature of her return visits to the HPL homesite or her intent to reside on the HPL, supported by a five-point analysis. (R. Ex. 60, IHO Decision II at 21–26.) ONHIR issued its Final Agency Action denying Plaintiff's claim on November 16, 2023. (R. Ex. 61.)

Plaintiff filed this action on March 31, 2024, requesting the Court's review of ONHIR's decision. (Compl. ¶ 1.) The parties have now cross-moved for summary judgment.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232.

When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

### B.   Judicial Review of an Agency Decision

Under the Administrative Procedure Act ("APA"), a district court may review federal agency action. 5 U.S.C. § 706. Although judicial review under the APA must be searching and careful, a court's role remains narrow. *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir. 1993). Under this narrow and deferential standard, the court cannot substitute its judgment for the agency's, especially where the "challenged decision implicates substantial agency expertise." *Ninilchik Traditional Council v. U.S.*, 227 F.3d 1186, 1194 (9th Cir. 2000). When reviewing agency action under the APA, the court may reverse or set aside the action if the court finds that that agency action was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by

substantial evidence." 5 U.S.C. § 706(2)(a), (e); *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989).

A court will find an agency's decision arbitrary and capricious "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1224 (9th Cir. 2011). ONHIR's action will be upheld "if the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Id*.

Alternatively, a court may overturn an agency decision under the abuse of discretion standard if the IHO failed to justify his or her decision. "[A]n agency must cogently explain why it has exercised its discretion in a given manner[.]" *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. 29, 48 (1983). The agency must provide findings and an analysis justifying the decision made. *Id*. (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167 (1962)). An agency's decision need only be "a reasonable, not the best or most reasonable, decision." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989).

Agency decisions must also be supported by substantial evidence. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *De la Fuente v. Fed. Deposit Ins. Corp.*, 332 F.3d 1208, 1220 (9th Cir. 2003) (citation omitted). The IHO's decision must be upheld "[w]here evidence is susceptible of more than one rational interpretation[.]" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

In a court's review of an agency action, "the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."

*Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Thus, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id*. at 770. As a general rule, the court cannot review an issue that the plaintiff failed to raise before the administrative tribunal. *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985).

### C. Relocation Benefits Under the Settlement Act

The Settlement Act, which Congress enacted in 1974, authorized the partition of the Joint Use Area between the Hopi and the Navajo Tribes, resulting in the Hopi Partition Land ("HPL") and the Navajo Partition Land ("NPL"). 25 U.S.C. § 640d *et seq*. The Settlement Act ordered members from these two tribes to relocate to the land partitioned to their respective tribal affiliation. *Id*. § 640d-13(a). The Act also authorized and created a benefit program to compensate those people who were forced to abandon their homes and relocate to a partitioned area. 25 U.S.C. §§ 640d-13(a), 14(b)(1)–(2). The Act conferred jurisdiction to the United States District Court for the District of Arizona to review appeals from any eligibility determinations made by the independent agency, now known as ONHIR, created by the Act to compensate relocated people. 25 U.S.C. § 640d-14(g).

An applicant for relocation benefits bears the burden of establishing by a preponderance of evidence "that the head of household and/or his/her immediate family were legal residents" of the HPL as of December 22, 1974—the date of the Settlement Act's enactment. 25 C.F.R. § 700.147(a); *see also* § 700.97. The Settlement Act provides, "No payment shall be made pursuant to this section to or for any person who, later than one year prior to December 22, 1974, moved to an area partitioned . . . to a tribe of which he is not a member." 25 U.S.C. § 640d-14(c). Moreover, "[r]elocation benefits are restricted to those who qualify as heads-of-household as of July 7, 1986." 25 C.F.R. § 700.147(e). To qualify as a head of household in this context, an individual must be either self-supporting or supporting his or her family.[1]

---

[1] Plaintiff established head of household status through her earnings in the summer of 1984, as stipulated by the parties, so the Court will not discuss it further. (Hr'g Tr. at 2–3, 11.)

- 6 -

A 1984 change to the Agency's regulations defines the term "residence" as the "legal meaning . . . which requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22, 277–78 (May 29, 1984). The final rule provides a list of factors that ONHIR may consider when assessing legal residency, including: ownership of livestock, ownership of improvements, grazing permits, home-site leases, public health records, medical and hospital records, school records, employment records, mailing address records, bank records, driver's license records, tribal and county voting records, homeownership or rental off of the disputed area, information obtained by Certification Field Investigation, Social Security Administration records, marital records, records of birth, and the Joint Use Roster, also known as the Bureau of Indian Affairs Enumeration Roster. 49 Fed. Reg. 22,278 (May 29, 1984).

If a claimant left the HPL temporarily to pursue higher education or employment, the claimant can still establish his legal residency by showing substantial and recurring contacts with his home within the HPL. *See Akee v. Office of Navajo & Hopi Indian Relocation*, 907 F. Supp. 315, 319 (D. Ariz. 1995). The Court refers to this as the "temporarily away" exception.

### III.    ANALYSIS

In its Motion, ONHIR argues that Plaintiff did not meet her burden of proving that the IHO's decision was arbitrary and capricious and not based on substantial evidence because (1) Plaintiff did not support her claim of residency on the HPL in 1984 with sufficient evidence, and (2) the IHO's discrediting of Plaintiff's testimony regarding the frequency with which Plaintiff returned to the HPL homesite was supported by substantial evidence.

The Court agrees with ONHIR that the key factual findings and conclusions in the IHO's decision are supported by substantial evidence from the record, and the IHO identifies contradictions in Plaintiff's testimony that call into question the credibility of Plaintiff and her mother as to certain facts. In Decision II, the IHO addressed the

deficiencies found by Judge Logan in the preceding litigation by citing substantially to the record.

**A. Residency Determination**

The IHO determined that Plaintiff failed to show legal residency in the HPL during 1984, as would be required to grant Plaintiff relocation benefits under the Settlement Act. (IHO Decision II at 45.) Plaintiff argues that her absence from the HPL homesite in the fall of 1984 during college qualifies her for a 'temporarily away' exception, which would allow her to reside in Texas for education while still maintaining legal residency on the HPL. (Pl. MSJ at 6, 9.) However, the focus of this inquiry is not on the fall of 1984, but rather the summer of 1984, when the parties stipulate that Plaintiff's income from her job at Thriftway qualified her for head of household status. (Hr'g Tr. at 2–3, 11.) Thus, the Court will focus its inquiry on the summer of 1984.

Plaintiff testified that she and her family "never really left" the HPL homesite before her grandmother relocated away from the HPL in 1985 because it "was always like [their] second home." (Hr'g Tr. at 4.) The IHO concluded that Plaintiff's characterization of the HPL homesite as a "second home" necessarily implies that Plaintiff's "*first* and *primary* home" is the family's trailer homesite in Tuba City. (Hr'g Tr. at 4; IHO Decision II at 26.) The IHO's understanding is supported by both Plaintiff's testimony and her mother Mary Mexicano's testimony, which establish Plaintiff's substantial connections to Tuba City. (Hr'g Tr. at 2–23.)

To establish legal residency, an individual must prove an intent and manifestations of intent to reside in a location. 49 Fed. Reg. 22, 277–78. For Plaintiff, that means showing her ties to the HPL were so strong and frequent that they establish her intent and efforts to return and remain. However, the record is clear that Plaintiff had substantial ties to Tuba City, justifying the IHO's finding of Tuba City (rather than HPL) residency. (IHO Decision II at 43.) Plaintiff testified that her parents bought a trailer and trailer homesite in Tuba City in the early to mid-1970s to facilitate her schooling—from kindergarten to high school graduation—in Tuba City. (Hr'g Tr. at 5.) That testimony was corroborated by her mother

Mary Mexicano, who testified that the trailer site was "a home, place to stay in Tuba City for a while." (Hr'g Tr. at 20.) By citing evidence showing that "the family's ties to Tuba City grew as time passed," the IHO did not err in concluding that Plaintiff's use of the homesite in Tuba City for many years reveals that she had "intent and manifestations of intent to reside off the HPL." (IHO Decision II at 42–43.)

The IHO's conclusion is further supported by Plaintiff's testimony that she joined the Tuba City Chapter of the Navajo Nation "as soon as she was able to" and maintains her Tuba City Chapter membership, rather than any membership with the Tonalea Chapter (which includes the HPL homesite) of which her father had previously been an official. (Hr'g Tr. at 12–13.) Plaintiff also stated in her application for relocation benefits that she moved from the HPL homesite to Tuba City in 1982 or 1983, which further bolsters the IHO's determination that she was no longer an HPL resident in the summer of 1984. (R. Ex. 5; IHO Decision II at 45.)

Finally, the record is clear that Plaintiff had substantial commitments in Tuba City, including kindergarten through high school education (before summer 1984) and a full-time job at Thriftway (during summer 1984), from which the IHO reasonably inferred that Plaintiff made "choices [that] demonstrate that [Plaintiff] was continuing with the residency pattern [in Tuba City] established by her family starting in the 1970s." (Hr'g Tr. at 5, 7–8, 14–17; IHO Decision II at 44.) As the IHO determined, substantial evidence shows that Plaintiff had long-standing and substantial ties to Tuba City sufficient to show an intent and manifestation of intent to reside there, rather than at the HPL homesite.

The Court agrees with ONHIR that, in the IHO's Decision II, the statement that the "record shows . . . the family's intent and manifestations of intent to reside off the HPL" is supported by both Plaintiff and her mother's testimony, as detailed *supra*. (IHO Decision II at 42.) Because of the deferential standard of review here, the Court will not purport to decide the merits of the case itself, but the IHO's Decision II's residency determination is reasonable and supported by substantial evidence sufficient to preclude a finding of arbitrary and capricious agency decision-making under the Administrative Procedure Act.

## B. Credibility Determination

Plaintiff claims that she visited the HPL homesite frequently and argues that such frequency should equate to HPL residency. The IHO considered the volume of Plaintiff's return visits to the HPL homesite and her Tuba City contacts and considered Plaintiff's credibility to conclude that Plaintiff failed to carry her burden to prove her residency on the HPL in the summer of 1984. (IHO Decision II at 41.) In examining the frequency of Plaintiff's return visits to the HPL homesite, the IHO properly considered various inconsistencies between Plaintiff's testimony and the record to determine that Plaintiff is not credible regarding such frequency. (IHO Decision II at 41.)

In the "Credibility Determinations," the IHO stated, "[Plaintiff's] Application, testimony, and supplemental evidence in the record contradict each other in multiple ways, which negatively affects [Plaintiff's] credibility." (IHO Decision II at 21.) The IHO credited Plaintiff's testimony about her college education, her work from 1981 to 1984, her family's trailer homesite in Tuba City, and her singular characterization of the HPL homesite as the family's "second home." (IHO Decision II at 26 Hr'g Tr. at 5, 7–8, 14–17.) However, the IHO found inconsistencies regarding, among other issues, the frequency with which she and her family returned to the HPL and her Chapter membership, which led the IHO to discredit Plaintiff's testimony on those issues. (IHO Decision II at 23, 25, 26.)

During the original 2015 hearing, Plaintiff testified that she and her family "never really left" the HPL homesite because it was "always like our second home." (Hr'g Tr. at 4.) The IHO found that statement in and of itself contradictory because the second half of the statement "confirms that Tuba City was, in fact, the family's *first* and *primary* home." (IHO Decision II at 26.) This point of inconsistency alone is not sufficient to call into question Plaintiff's testimony regarding her contacts with the HPL homesite in 1984. However, the IHO bolstered his finding of inconsistency with sixteen listed contradictions in the record—each confirmed by the Court to be accurate recitations of the evidence in

the record—between Plaintiff's statement and other portions of her testimony, the testimony of others, and other evidence in the record. (IHO Decision II at 21–24.) For example, the IHO highlighted (1) Plaintiff's 2015 testimony that her family "never really left" the HPL homesite until 1985 contrasted with her and her mother's testimony that the family lived in a trailer homesite in Tuba City beginning in the early to mid-1970s so Plaintiff could complete kindergarten through high school in Tuba City (Hr'g Tr. at 5, 7, 15–17.); (2) Plaintiff's testimony that she returned to the HPL homesite "at least three times a week" during the summer of 1984 contrasted with her full-time work schedule in Tuba City during the summer of 1984. (Hr'g Tr. at 6, 8.) Regarding Plaintiff's departure from the HPL homesite, the IHO's credibility finding is cogent and substantiated by the record.

The IHO bolstered his finding of Plaintiff's partial lack of credibility with inconsistencies in the record regarding her Navajo chapter membership. (IHO Decision II at 25–26.) In her original application for relocation benefits, Plaintiff indicated that she was not presently an enrolled member of any Navajo Nation Chapter. (R. Ex. 5.) However, during the 2015 hearing, Plaintiff testified that she was a current member of the Tuba City Chapter and had joined "as soon as [she] was able to." (Hr'g Tr. at 13.) When asked why she indicated differently in her application, Plaintiff had no justification. (Hr'g Tr. at 13–14.) The IHO found this to be a "material inconsistenc[y]" that "undermine[s] Applicant's overall credibility." (IHO Decision II at 26.) The IHO's finding that the inconsistencies constitute a "self-serving effort to obscure the Agency's and IHO's understanding" of Plaintiff's residential connections was unnecessary, but the IHO's use of these inconsistencies in weighing Plaintiff's testimony regarding her connections to Tuba City is cogent and substantiated by the record. (IHO Decision II at 26.)

The IHO's Decision II was prompted by Judge Logan's remand of the IHO's original decision and ONHIR's Final Agency Action denying Plaintiff relocation benefits in 2015. In his decision, Judge Logan held that he could not uphold the IHO's 2015 Decision because "the IHO[] fail[ed] to satisfy the substantial evidence standard" with respect to his discrediting of Plaintiff's credibility and testimony. *Beam*, 624 F.Supp.3d at

1079. Judge Logan remanded the case with an acknowledgement that "open questions remain as to the credibility of Plaintiff and her mother's testimony, as well as to whether Plaintiff satisfied the residency requirement at the time she became a head of household." *Id*. The IHO's Decision II satisfied that direction by accurately and reasonably citing a significant amount of evidence from the record in its 49 pages, particularly from the testimony of Plaintiff and her mother and Plaintiff's original application for relocation benefits. The IHO relied on substantial evidence from the record to support his conclusions of both Plaintiff's lack of residency on the HPL and Plaintiff's lack of credibility regarding the frequency with which she returned to the HPL.

### C. Deferential Standard of Review

Under the APA, a district court's review of a federal agency action may only conclude in reversal if the Court finds that the agency action was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." 5 U.S.C. § 706(2)(a), (e). None of those shortcomings are present in the IHO's Decision II. The IHO addressed the evidentiary shortcomings that Judge Logan found in Decision I, and Decision II rested on reasonable and cogent findings against Plaintiff's alleged HPL residency in the summer of 1984, substantiated with substantial evidence from the record. Thus, the IHO's Decision II, as affirmed by ONHIR, was neither arbitrary and capricious nor unsupported by substantial evidence, and the Court will thus affirm that decision.

**IT IS THEREFORE ORDERED** denying Plaintiff Ina Beam's Motion for Summary Judgment (Doc. 17).

**IT IS FURTHER ORDERED** granting Defendant Office of Navajo and Hopi Indian Relocation's Cross-Motion for Summary Judgment (Doc. 24).

**IT IS FURTHER ORDERED** affirming the decision of the Independent Hearing Officer as affirmed by the Office of Navajo and Hopi Indian Relocation.

. . .

. . .

. . .

1    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment
2 accordingly and close this case.
3    Dated this 10th day of June, 2025.

_____
Honorable John J. Tuchi
United States District Judge